UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TAMMY HITCHCOCK and ERIC HITCHCOCK | ) ) ) |
| Plaintiffs, | ) ) ) Civil Action No. SA-16-CA-922-XR |
| VS. | ) ) ) ) |
| STEAK N SHAKE, INC. | ) ) |
| Defendant. | ) |

## ORDER

On this date, the Court considered Defendant Steak N Shake's Motion for Summary Judgment (dock t no. 39), Plaintiff's Motion for Leave to File Second Amended Complaint (docket no. 40), Plaintiff's Motion for Extension of Time to File Response/Reply to Motion for Summary Judgment (docket no. 41), and Plaintiff's Motion to Continue Defendant's Motion for Summary Judgment (docket no. 48), and the various responses and replies thereto.

This is a slip and fall case.[1] Plaintiffs' First Amended Original Complaint, filed December 20, 2016, is the live pleading.[2] It alleges that Plaintiff Tammy Hitchcock went to Steak N Shake ("SNS") to eat dinner with her husband and son on August 21, 2015, and while there she "was seriously injured as a result of a dangerous condition that existed on the floor within the

---

[1] This case is here on diversity jurisdiction, having been originally filed in state court and then removed by Defendant. The Court notes that Plaintiffs' pleadings allege that both Plaintiff and Defendant are Texas residents, but Defendant's notice of removal and its answer assert that it is an Indiana corporation with its principal place of business in Indiana, and it has supported this assertion with the Declaration of its representative and in-house counsel Christopher Evens. Plaintiff has never challenged this jurisdictional evidence, and both sides agree that the amount in controversy exceeds $75,000. Docket no. 6.

[2] Plaintiffs filed their unopposed motion to amend complaint and their proposed First Amended Original Complaint on December 20, 2016. Docket no. 14. The next day, this Court entered a text order granting the motion and directing the Clerk to file the Amended Complaint. It appears that the Clerk never docketed the Complaint, and thus the Court deems it filed December 20, 2016. Because the Amended Complaint was never filed, it appears that Defendant never filed an answer.

-1-

establishment." First Am. Compl. ¶¶ 12-13. Specifically, it alleges that "[t]he linoleum flooring was wet with a cleaning solvent that was so slick that Plaintiff fell while crossing the floor" and she sustained "significant injuries to her ankle, knee, shoulder and abdomen." *Id.* ¶ 13. Plaintiff Tammy Hitchcock brings a premises liability claim against SNS, and her husband Eric brings bystander and loss of consortium claims.

The parties have been slow to complete discovery and, shortly before SNS moved for summary judgment based on the allegations that Plaintiff slipped in a cleaning solvent, Plaintiffs learned that a customer had reported a spill in the general area where Plaintiff fell. The day after SNS filed its motion for summary judgment, Plaintiffs filed a motion seeking to amend their Complaint to reflect that Tammy Hitchcock slipped in a puddle of spilled water, rather than in a cleaning solvent, as was initially believed and pled by Plaintiffs. Plaintiffs assert that they did not learn of the spill until August 2017, when they deposed an SNS employee, in part because Defendant had been evasive in discovery. Plaintiffs also seek to continue consideration of the motion for summary judgment until further discovery is completed, but have also responded subject to that motion.

**Background**

Plaintiffs filed this action in state court on August 11, 2016, and Defendant removed it on September 16, 2016. Plaintiffs' state court petition alleged that Plaintiff Tammy Hitchcock slipped because the floor was wet with a cleaning solvent. The Court issued a Scheduling Order on October 21, 2016, setting a deadline for filing motions to amend pleadings on December 20, 2016. On December 20, 2016, Plaintiffs filed their First Amended Original Complaint, which continued to allege that Plaintiff Tammy Hitchcock slipped on cleaning solvent.

On December 21, 2016, Defendant provided its objections and answers to Plaintiffs' First Set of Interrogatories, Requests for Production, and Requests for Admission. Docket no. 23-2. Interrogatory No. 15 asked Defendant to "identify and describe the source of the condition and/or substance that caused Plaintiff's slip and fall that is the basis of this suit." Defendant objected to the interrogatory as "speculative and harassing in nature" and on the basis that it "assumes facts that are in dispute" and "expressly denied by this Defendant thereby making any answer to this Interrogatory misleading." Interrogatory No. 19 asked Defendant to "identify any and all cleaning products,

liquids, solvents, and/or other substances applied to the floor of the premises in question on the day of the incident" and "when each substance was applied," as well as where and by whom. Defendant objected to the interrogatory as unreasonably speculative and harassing in nature, unduly burdensome, overly broad, vague, and ambiguous, multifarious, and calling for irrelevant information. Requests for Production 2, 5 and 6 sought, among other things, video of the Plaintiff's fall, the incident, and the premises, and Defendant filed various boilerplate objections. Request for Admission No. 13 asked Defendant to admit "that Defendant applied a cleaning solvent to the floor of the store on the day of the incident prior to the incident taking place," which Defendant denied.

On March 15, the Court granted the parties' motion to extend the discovery deadline from April 17 to September 1, 2017. Docket no. 22 and text order dated March 15, 2017.

On March 28, Plaintiffs filed a motion to compel discovery, which was referred to the Magistrate Judge. Plaintiffs asserted that Defendant had produced only a guest incident report, a transcription of an audio recording of an interview of Plaintiff Tammy Hitchcock, three surveillance videos of the interior of the store in the moments leading up to the fall, the fall, and moments after, and a copy of an insurance policy. The video depicted an employee mopping in the area where Tammy Hitchcock fell moments before she fell there. Plaintiffs sought all video footage of the premises from the day of the incident from the time employees first arrived to store closing. The parties reached an agreement concerning the Interrogatory responses, Requests for Admission, and all but certain Requests for Production. Docket no. 26. On May 25, the Magistrate Judge found Defendant's objections to the Requests for Production be impermissibly general and conclusory, noted that surveillance video footage of the premises from the day of the incident from the time employees first arrived to its closing was highly relevant, and granted the motion. The Magistrate Judge also overruled Defendant's objections to requests seeking documents reflecting the name of the employee(s) responsible for maintaining the front entrance on the date of the incident. Docket no. 30.

On June 30, Plaintiffs' counsel emailed Defendant's counsel to discuss a date for final receipt of all items ordered by the Magistrate Judge, seeking dates for the deposition of the employee who was mopping at or near the time of the fall, her supervisor, and an SNS corporate representative, including on the topic of "the 'water-less cleaning system' used by Defendant's employee(s) on the

day of the incident." Docket no. 41-1.

Defendant asserts that it produced a 12-hour video to Plaintiffs' counsel containing footage from twelve different cameras on July 5. Docket no. 44 ¶ 3. Defendant contends that this video "captured the reporting of [a] spill and its clean up." *Id.*

On July 17, Plaintiffs' counsel again emailed Defendant's counsel about obtaining a date to depose "the employee mopping immediately prior to Mrs. Hitchcock's fall." He also asked for dates to depose the corporate representative on several topics, including "the 'water-less cleaning system' used by Defendant's employee(s) on the date of the incident." Docket no. 41-1.

On July 26, Plaintiffs' counsel emailed Defendant's counsel that he "managed to get the video you provided to work" but noted it was "roughly two hours, which does not comply with the Court's order on Plaintiff's Motion to Compel." He asked for "all footage of the premises from the day of the incident." Docket no. 46-1. He also again asked for deposition dates "for the mopping employee." *Id.* On July 31, Defendant's counsel advised Plaintiffs' counsel that it was the only video footage SNS had for the incident. *Id.*

On August 23, the Court granted Defendant's agreed motion to extend the discovery deadline from September 1 to November 1, 2017. Docket no. 35 and August 23, 2017 text order.

Throughout August, the parties worked to reach agreement on the topics to be discussed at the 30(b)(6) depositions. Docket no. 46-1. On August 26, counsel discussed deposing corporate representatives. Plaintiffs' counsel again requested information concerning which corporate representatives would be deposed on certain previously agreed topics, including "the 'water-less' cleaning system' used by Defendant's employee(s) on the day of the incident" and "Defendant's policies and procedures related to the use of the 'water-less cleaning system' used by Defendant's employee(s) on the date of the incident." Docket no. 46-1 (Ex. B).

On August 29, Plaintiff deposed Defendant's employee Karah Toepher, the employee who had been mopping immediately prior to Plaintiff's fall. She testified that a customer ("the man in black") reported to her and to Jordan, the employee working the grill, that there was something on the floor in front of the counter, that the spill was "like the size of a baseball" and "like a little four inches in diameter space maybe," that in her opinion it was clear and most likely water, and that she assumed it was water. She testified that she retrieved a dry mop, used it to clean the area, "made sure

the floor was clean and completely dry," and then placed a "wet floor" sign on the area because she had been trained to do so. During the deposition, Plaintiffs' counsel did not ask about a water-less cleaning system, and appeared to be aware that a customer had reported a spill.

On September 6, Plaintiffs' counsel asked Defendant's counsel to provide dates for the deposition of SNS Inc.'s representatives in San Antonio and Florida. On September 11, Defendant's counsel asked Plaintiffs' counsel if he had dates and times in mind to depose the corporate representatives.

On September 15, the parties deposed Eric Hitchcock and agreed to postpone Tammy Hitchcock's scheduled deposition because she was not feeling well.

On September 19, 2017, the scheduling order deadline for filing dispositive motions, Defendant moved for summary judgment based on the allegations in Plaintiff's First Amended Complaint, asserting that Plaintiff could not establish that a condition of the premises created an unreasonable risk of harm. Defendant noted that Plaintiff had not retained an expert "to offer an opinion about Defendant's restaurant premises' floor's safety much less was an inspection of Defendant's restaurant premises' floor ever performed to formulate an opinion as to unreasonable dangerousness of the area of the floor at Defendant's restaurant premises where Plaintiff fell." Motion at 3. Defendant contends that Plaintiff cannot establish Defendant's failure to exercise ordinary care and causation because the incident involved commercial flooring, a commercial solvent, and the use of a commercial dry mop, and thus required expert testimony to establish the standard of care and its violation along with causation. Defendant further moved for summary judgment on Eric's claims. The parties then attempted to mediate, but were not successful.

On September 20, Plaintiffs filed an opposed Motion for Leave to File Second Amended Complaint. Docket no. 40. Plaintiffs assert that, prior to deposing Defendant's employee Karah Toepher on August 29, they believed that Ms. Toepher was applying a cleaning solvent to the area in front of the food counter in the moments before the fall, but at the deposition Ms. Toepher testified that a customer reported a spill on the ground, and that it was clear liquid, most likely water. Plaintiffs state that they received the deposition transcript on September 19, and were seeking leave to amend their complaint to reflect this newly discovered information. Plaintiffs contend that Defendant would not be prejudiced because "this information was known by Defendant and its

employees from the inception of this case" and "Plaintiffs did not discover this information earlier due to the evasiveness of Defendant's responses to written discovery." Docket no. 40 at 2.

On September 21, Plaintiffs' counsel emailed Defendant's counsel with proposed dates for the depositions of Defendant's corporate representatives. The parties continued to discuss possible dates on September 22, with Defendant's counsel noting that he needed to finish Tammy Hitchcock's deposition before the corporate representative depositions.

On September 22, Plaintiffs filed a Motion for Extension of Time to respond to the Motion for Summary Judgment until after depositions of Defendant's corporate representatives and experts, stating that the discovery deadline had been extended by Defendant's agreed motion until November 1 and that the depositions were necessary to respond to the motion. Plaintiffs further asserted that they needed Eric's deposition transcript to respond to the motion for summary judgment.

On September 27, SNS filed its response in opposition to the motion to amend the complaint, therein noting that (1) the Scheduling Order deadline for amending pleadings was December 20, 2016, (2) Toepher had been identified as a person with relevant information in November 2016, and (3) during discovery and before Toepher's August 29 deposition, Defendant produced a 12-hour video containing footage from twelve different cameras to Plaintiff's counsel on July 5, and this video captured the reporting of the spill and its clean up. Docket no. 44. Defendant therefore contends that Plaintiffs have known that a spill was reported since July and have failed to demonstrate good cause for amending beyond the scheduling order deadline.

Plaintiffs replied that they did not discover that the substance was water in time to meet the December 20 scheduling order deadline for amending pleadings due to Defendant's evasive discovery responses. Docket no. 45. They note that, when Plaintiffs specifically asked Defendant to identify the substance that caused the fall in Interrogatory No. 15, Defendant instead filed only objections and referred to its 30(b)(6) deposition. With regard to the video provided in July, Plaintiffs note that it does not contain audio, thus Plaintiffs did not hear the report of spilled water, and the prior video production excluded this event. They further note that the full video was not provided until July 2017, seven months after the scheduling order deadline for amending pleadings had passed. They assert that Toepher's August 29 deposition testimony was the first time any person affiliated with Defendant ever identified the dangerous condition, and that transcript was received

on September 19, 2017.

On September 27, Defendant responded in opposition to Plaintiff's motion to extend time to respond to the motion for summary judgment. Docket no. 46. Defendant argues that the basis for its motion is the lack of expert testimony other than damages, and nothing in the corporate depositions will create a material fact issue because "Defendant has no intention to provide its corporate representative as experts in this case." Docket no. 46 at 3. Defendant further noted that it had provided a copy of Eric's deposition transcript on September 25.

On October 2, SNS filed a sur-reply on the motion for leave to amend, arguing that good cause to amend is lacking because Eric Hitchcock "did not believe it was water on Defendant's floor on the date of the accident" because "he testified it was a visible liquid not water." Docket no. 47.[3] SNS further notes that the motion to compel concerned the Requests for Production, and not Interrogatories, on which the parties had reached agreement. SNS argues that the fact that the video footage it produced in July did not contain audio is "not a basis to allow Plaintiffs to amend their Complaint as the video footage produced clearly shows the lack of application of a cleaning solvent and shows the reporting of a spill." SNS contends that Plaintiffs knew their complaint was incorrect for some time and could have filed a motion to amend before the dispositive motion deadline set by the Court.

On October 3, Plaintiffs moved to continue consideration of the motion for summary judgment. Docket no. 48. They contend that they need the corporate representative depositions to obtain testimony that will bind the corporation with respect to the failure to use ordinary care. Plaintiffs further seek a continuance until they can depose Defendant's experts on liability and/or damages. Plaintiffs also filed a response to the motion for summary judgment, subject to their motion to continue consideration of the motion. Docket no. 49. Defendant responded in opposition, arguing that the depositions of Defendant's corporate representatives and/or its experts will not create a genuine issue of material fact. Docket no. 51.

---

[3] The Court disagrees with Defendant's characterization of Eric's testimony as that the liquid was "not water." He testified that it was "visible liquid" and he could not tell what it was. Eric Hitchcock depo. at 66. He also stated there was "some type of liquid on the floor." *Id.* at 68. Water can be a "visible liquid." Eric never indicated that the liquid was not water. In fact, Defense counsel acknowledged in his description of deposition Ex. 1 that it depicted "to the best of Mr. Hitchcock's recollection the water or the water splatter that was near his wife upon his arrival to her after she had her incident." *Id.* at 75.

Analysis

**A. Motion for Leave to File Second Amended Complaint**

Generally, Rule 15(a) of the Federal Rules of Civil Procedure governs amendment of the pleadings before trial. Rule 15(a) permits a party to amend a pleading with the opposing party's consent or the court's leave, and provides that leave should be given "freely . . . when justice so requires." FED. R. CIV. P. 15(a). However, when a motion to amend is filed after the scheduling order deadline for the filing of such motions, the motion must also satisfy Rule 16 and demonstrate good cause. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003). Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

Plaintiffs contend that they could not have moved to amend the Complaint within the scheduling order deadline because they did not receive the video tape including the customer reporting a spill until July 2017, and that video did not contain audio, such that they did not learn of the spill until Toepher's August 29, 2017 deposition. The Court finds that Plaintiffs' counsel was unaware of the reporting of a spill until July or August 2017. Plaintiff could reasonably believe from the footage received before July 2017 that an SNS employee was applying some sort of cleaning solution through the use of a dry mop. Defendant has not produced any evidence indicating that Plaintiffs' counsel knew or had reason to know of the spill until July 2017 at the earliest, when the full video footage (without audio) was produced. Counsels' emails concerning the 30(b)(6) depositions further indicate that Plaintiffs' counsel believed through at least August 26 that the SNS employee had applied some kind of water-less cleaning solution to the floor immediately before Plaintiff's fall. It appears that counsel viewed the later produced videotape shortly before Toepher's deposition, and then discussed and confirmed the spill with Toepher at her deposition on August 29, 2017. While the Court acknowledges Defendant's position that Plaintiffs could have moved at that time to amend their complaint, it was not wholly unreasonable for them to await receipt of the deposition transcript before filing the motion, only three weeks later. There is no indication that Plaintiffs have filed their motion in an attempt to avoid Defendant's motion for summary judgment.

Plaintiffs argue that the amendment is important because this is an action for premises liability, which requires proof that a condition existed that posed an unreasonable risk of harm, that Defendant's employees knew of the danger, and that Defendant's employees failed to make the condition safe or adequately warn customers, and the proposed amendment is critical to those elements. The Court agrees that the amendment is important. Plaintiffs' pleadings should match their theory of the case and should be amended to reflect what Plaintiffs believe actually occurred, rather than what they mistakenly believed occurred. At this point in time, it appears undisputed that a customer reported a spill in the area where Plaintiff fell shortly before her fall, and neither party contends that a cleaning solvent caused the fall. Because facts alleged in a pleading act as binding judicial admissions,[4] it is important that Plaintiffs be permitted to amend their Complaint to accurately reflect the facts as they believe them to be.

Plaintiffs assert that the only real prejudice to Defendant in allowing the amendment is that Defendant currently has a pending dispositive motion, but they argue that, to the extent it is based on inaccurate facts, "Defendant bears the blame for its evasiveness in discovery." Plaintiffs argue that Defendant has known since the case's inception that a customer reported spilled liquid, but it concealed this information from Plaintiffs. Defendant notes that Plaintiffs complain of its Interrogatory responses, but that the parties reached agreement on their disputes concerning all but certain Requests for Production. This is true, and if Plaintiffs believed that Defendant's answers remained unsatisfactory, they could have pursued their motion to compel. However, it is also true that Defendant's discovery responses were evasive. Further, the Court will consider Defendant's motion for summary judgment, including the arguments raised in its reply concerning the facts as proposed in Plaintiffs' Second Amended Complaint, and thus the amended Complaint does not wholly render the motion for summary judgment moot and any prejudice is minimal.

Plaintiffs further argue that a continuance is available to cure any prejudice. Defendant opposes any continuance because of its pending motion for summary judgment. As noted, the Court

---

[4] *See, e.g.*, *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) ("Irrespective of which document contains the more accurate account, the Davises are bound by the admissions in their pleadings, and thus no factual issue can be evoked by comparing their pleadings with Dr. Davis' affidavit. . . . Facts that are admitted in the pleadings 'are no longer at issue.'") (citing *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("[F]actual assertions in pleadings are . . . judicial admissions *conclusively* binding on the party that made them).").

will consider the motion for summary judgment, which is denied on the merits. Thus, a continuance is not needed to cure any prejudice from the granting of the motion to amend.

Considering all the factors, the Court finds good cause to allow the amendment. The Court also finds that the Rule 15 factors are satisfied, and thus grants Plaintiffs' motion for leave to amend.

**B. Defendant's Motion for Summary Judgment on Plaintiff Tammy Hitchcock's claims**

It is undisputed that Plaintiff Tammy Hitchcock was SNS's invitee. As such, SNS owed her a duty to exercise reasonable care to protect her from dangerous conditions in the store known or discoverable to it. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). To recover damages in a slip-and-fall case, a plaintiff must prove the following: (1) the owner/operator had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner/operator's failure to use reasonable care proximately caused the plaintiff's injuries. *Id.*

SNS's motion for summary judgment is based on the facts as pleaded in the First Amended Complaint, which alleges that a commercial cleaning solvent was a dangerous condition on the floor that caused Plaintiff's fall. Based on that alleged fact, SNS's summary-judgment argument is premised on the lack of expert testimony concerning the existence of an unreasonably dangerous condition and the standard of care, specifically that the use of a commercial cleaning solvent is not within the experience of a lay person. Plaintiffs' response argues that no expert testimony is required for a simple slip-and-fall case based on a puddle of water and that a fact question exists on each element of the premises liability claim. In its reply, SNS argues that even if there was a liquid on the floor before the fall, summary judgment is appropriate because whether the substance is water is disputed, Defendant employed remedial measures and placed a warning sign, and Eric Hitchcock testified that Defendant was not negligent, and therefore "expert testimony [on liability] is necessary as stated in Defendant's dispositive motion." Docket no. 50 at 3.

Plaintiffs filed a motion to extend the time for responding to this motion and a motion to continue until after depositions of Defendant's corporate representatives and experts. Because Plaintiffs timely responded to the motion and further discovery is not necessary, these motions are denied.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In making a summary-judgment determination, the court should review all the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

Plaintiffs' most recent Complaint alleges that "Plaintiff slipped in a puddle of water while crossing the floor" and "[t]he puddle of water was a dangerous condition." It further alleges, "Shortly before Plaintiff's fall, a customer reported a spill to Defendant's employees, informing Defendant's employees that a clear substance (believed to be a puddle of water) was present on the floor of the premises in front of the counter. Defendant's employees failed to properly clean the spill and make the floor reasonably safe. They also failed to adequately warn customers of the dangerous condition."

Although Plaintiffs originally pled that it was a cleaning solvent, the Court has granted Plaintiffs' motion for leave to amend, and admissions made in superseded pleadings are generally considered to lose their binding force and to have value only as evidentiary admissions. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983); *In re Rollings*, 451 F. App'x 340, 348 (5th Cir. 2011); *see also Blankenship v. Buenger*, 653 F. App'x 330, 335-36 (5th Cir. 2016) ("withdrawn . . . pleadings are no longer judicial admissions"). Both parties now appear to agree that it was not a cleaning solvent that was allegedly on the floor and allegedly caused Tammy Hitchcock's fall — Plaintiff no longer contends that a cleaning solvent caused the fall, and Defendant has denied applying a cleaning solvent on the day of the incident. Rather, the undisputed evidence indicates that a customer reported a liquid spill shortly before the incident in an area near where Tammy Hitchcock fell, and Plaintiff contends that Tammy slipped in that liquid.

Thus, Plaintiffs have produced some evidence that SNS employees had actual knowledge of some condition (a puddle of liquid) on the premises, and Plaintiffs allege that a puddle of liquid on a store floor poses an unreasonable risk of harm. Plaintiff has provided some evidence of the first two elements. With regard to the third and fourth elements – whether SNS exercised reasonable care to reduce or eliminate the risk (and relatedly, whether a risk remained) and, if not, whether such failure proximately caused the fall and Tammy's injuries – there is a factual dispute. Karah Toepher

testified several times at her deposition that she completely cleaned the area of the spill with a dry mop, and that it was clean and dry when she was done. She testified that she placed a "wet floor" sign over the area of the spill because she had been trained to do so, even though the floor was dry.[5] Toepher and another customer walked in the area where Plaintiff fell but did not fall. However, Eric Hitchcock testified that there was visible liquid on the floor around Tammy's feet after she fell and that it appeared that Tammy slipped in it. Eric's testimony is direct evidence that a liquid was on the floor and is circumstantial evidence that Tammy slipped in that liquid. Thus, a fact issue exists on the third and fourth elements.

Defendant's argument that expert testimony is required because of the alleged use of a commercial cleaning solvent is rendered moot. However, Defendant maintains that summary judgment is still appropriate "due to the lack of testimony from a liability expert." Docket no. 50 at 3.[6] Whether expert testimony is required is a question of law. *FFE Transp. Servs. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004). Expert testimony is necessary only where the alleged negligence is of such a nature as not to be within the experience of a lay person. *Id.*; *see also Reyes v. Kroger Texas LP*, No. 3:08-CV-0612-D, 2011 WL 145252, at *4 (N.D. Tex. Jan. 14, 2011). In *Reyes*, the court noted that expert testimony was not needed where employees observed that there was a grease puddle on the spot where the plaintiff fell, that there was a grease stain on her pants after she fell, and that her knee was bruised and swollen immediately after falling. The court held that this was evidence from which a jury could conclude that the manner in which chickens were displayed proximately caused the plaintiff's injuries. *Reyes*, 2011 WL 145252, at *4.

In *Rivers v. Kroger Texas, LP*, No. 3:08-CV-1612-D, 2009 WL 2596601 (N.D. Tex. Aug. 21, 2009), the court noted that Texas courts consistently hold that a puddle of water on a store floor

---

[5] It is unclear whether Tammy Hitchcock could see the wet floor sign from where she approached, and she fell in an area near the wet floor sign but before reaching it.

[6] SNS also cites Eric's deposition testimony that he "would not go so far as to say personnel were negligent." Docket no. 50 at 3 (citing Eric Hitchcock depo. at 162). However, he continued this answer with "That they wanted to harm my wife. Do I believe that they didn't clean up something that was on the floor, yes. Do I believe that there was some liquid on the floor that created an environment that was too slick to walk on, yes. Is it their responsibility to maintain a safe environment for its customers, yes." *Id.* Plaintiffs' counsel also objected and stated, "I don't think you know what the definition of negligence is" and Eric stated, "Okay. I do not know." *Id.* Eric's statement is a legal conclusion, and does not create a need for expert testimony.

poses an unreasonable risk of harm, and rejected Kroger's argument that expert testimony was required concerning what care Kroger should have taken because a jury could conclude that it was unreasonable to leave a puddle in place and fail to warn customers. In *Towers of Town Lake Condominium Ass'n, Inc. v. Rouhani*, 296 S.W.3d 290, 298-99 (Tex. App.–Austin 2009, pet. denied), the court held that a layperson could reasonably determine that there was a causal link between a slick pool deck surface and the plaintiff's fall, such that expert testimony was not necessary to establish causation. In *Farrer v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 703-04 (Tex. App.–Houston [1st Dist.] 2011, no pet.), the plaintiff fell on a wet painted wheelchair ramp, which he alleged was a dangerous condition. The court held that expert testimony on causation was not needed where the plaintiff testified that he fell on the ramp when it was wet from rain and the property manager testified that she knew the painted ramp could be slippery, so she mixed some sand in the paint, and tested its slipperiness by walking on it when dry, but not when it was wet.

SNS argues that *Rivers* is distinguishable because that defendant failed to remedy the situation or warn customers, whereas the evidence here shows that remedial measures were taken and a warning sign placed. SNS similarly distinguishes *Reyes* on the basis that the defendant did not take remedial measures. But just as it is within a lay person's province to evaluate a puddle left unremedied, a jury could evaluate whether Toepher's efforts to clean the liquid spill were sufficient to make the condition reasonably safe without expert testimony. Defendant states that in *Rouhani*, the plaintiff did hire an expert engineer to provide testimony, and "said expert testimony provided more than a surmise or suspicion and could on its own, provide legally sufficient [evidence] to establish causation." But that argument ignores the court's conclusion that no expert testimony was needed at all. Defendant also distinguishes *Farrer* because that plaintiff "provided testimony that he fell which allowed the court to rule expert testimony was not needed as to causation," but "Plaintiff Tammy Hitchcock has not provided her testimony as evidence to support causation." Docket no. 50 at 4. Defendant notes that it attempted to depose Tammy Hitchcock on September 15, but the deposition was not completed because she was not feeling well, and has been postponed to an unspecified date. Tammy's testimony is not necessary, however, because Eric testified that

there was visible liquid on the floor, that the floor was wet, and that it was slick.[7]

Accordingly, because material fact issues exist and expert testimony on liability is not required, Defendant's motion for summary judgment as to Tammy Hitchcock's premises liability claim is denied.

**C. Motion for Summary Judgment on Eric Hitchcock's claims**

SNS moves for summary judgment on Eric's bystander and loss of consoritum claims. It asserts that, to the extent these claims are derivative of Tammy's claims, they fail if Tammy's claims fail. Because the Court has denied summary judgment on Tammy's premises liability claim, it also denies summary judgment on this basis.

SNS further argues that Eric's bystander claim fails because he did not see the fall occur. Plaintiffs sought an extension of time to respond to this motion until they received a copy of Eric's deposition, which was provided on September 25. Plaintiffs timely responded to the motion for summary judgment on October 3. Plaintiffs also filed a motion to continue consideration of the motion for summary judgment, but none of the evidence sought appears to be directed to Eric's claims. Therefore, both motions are denied.

In Texas, bystander recovery is available if a plaintiff can establish that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 578 (5th Cir. 2001) (citing *Freeman v. City of Pasadena*, 744 S.W.2d 923, 923-24 (Tex. 1988)). Plaintiffs argue that Eric's bystander claim may be based on his presence when the injury occurred and because he heard the fall and then immediately rushed to Tammy. Because he heard the fall and reacted to it nearly instantaneously, Plaintiffs argue, the motion for summary judgment should be denied.

---

[7] The fact that Eric could not identify the liquid in a picture he took of Tammy lying on the floor after the fall is relevant evidence, but it does not conclusively establish that there was no liquid or that the floor was not slick, given Eric's testimony. Further, if Tammy's testimony were required, the Court would be inclined to grant Plaintiffs' motion to continue consideration of the summary judgment motion until after her deposition.

-14-

The Fifth Circuit discussed the contemporaneous observance requirement in *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 578 (5th Cir. 2001). In *Riddell*, a football player was allegedly injured in his last tackle. His mother was present in the stands during the scrimmage, but did not see his last tackle, see him leave the field, or see him lie down. The mother was told he was lying on the ground, "so she went down to the field and saw him unconscious and foaming at the mouth." *Id.* at 571. The Fifth Circuit held that because the mother "did not witness the injury – she did not have a contemporaneous perception of it" – she could not recover as a bystander. *Id.*

The Fifth Circuit discussed *United Services Auto Association v. Keith*, 970 S.W.2d 540, 542 (Tex. 1998), in which "Dianna Keith arrived on the scene of an automobile accident and perceived that her daughter's car was still smoking, and heard the 'scary noises' her daughter was making in response to her injuries"; the mother "remained there while the rescue crews removed her daughter from the car and accompanied her daughter to the hospital." *Id.* The Fifth Circuit stated:

> Despite Keith's being a witness to the pain and suffering that resulted from the accident, the court denied the claim, stating that "Texas law still requires the bystander's presence when the injury occurred and the contemporaneous perception of the accident." Where a plaintiff does not meet these requirements, even where the observance of the effects of the injury creates an emotional impact, "[she] is in the same position as any other close relative who sees and experiences the immediate aftermath of a serious injury to a loved one"—recovery is not available. That a parent arrives on the scene and witnesses a child's "pain and suffering at the site of the accident rather than at the hospital or some other location does not affect the analysis."

*Rodriguez*, 242 F.3d at 578.

Neither *Rodriguez* nor *Keith* involves the exact situation here, where the relative was in close proximity to the accident and heard it. But *Keith* indicates that the Texas Supreme Court might recognize this situation; it specifically noted that Keith "did not see or hear the crash." *Keith*, 970 S.W.2d at 532. Other Texas courts have permitted non-visual perceptions as a basis for bystander recovery. In *Bedgood v. Madalin*, 589 S.W.2d 797, 802-03 (Tex. Civ. App.–Corpus Christi 1979), *reversed on other grounds*, 600 S.W.2d 773, 775-76 (Tex. 1980), a father in the back yard, about 100 feet from the place of the accident, heard a car hit his son, his son scream, and a loud thud, and immediately ran to the scene to find his son gravely injured and unconscious. The court of appeals stated, "we have no difficulty with the fact that Dr. Madalin did not visually witness the accident,

-15-

but rather heard it and then witnessed the results soon thereafter" such that "his perception of the accident was still contemporaneous." *Id.* at 803. The Supreme Court later reversed the award of damages to Dr. Madalin on the basis that such a claim was not pled, and expressed no opinion on the merits of the claim.

In *Haught v. Maceluch*, 681 F.2d 291 (5th Cir. 1982), the Fifth Circuit discussed the early development of "uninjured bystander" cases and noted that "the inquiry should focus more on the plaintiff's experiential perception of the accident, not just the injury, and should measure that perception in comparison to learning of the accident from others after its occurrence." *Id.* at 300. Applying this focus, the court concluded that the Texas Supreme Court would "find a contemporaneous perception by a mother who experiences a negligently inflicted childbirth," even though the mother was unconscious at the time of the actual birth, since she was conscious during eleven hours of labor and perceived something was wrong. *Id.* at 301. The court cited *Landreth v. Reed*, 570 S.W.2d 486 (Tex. Civ. App.–Texarkana 1978, no writ), where the court stated that "actual observance of the accident is not required if there is otherwise an experiential perception of it." In *Landreth* it was unclear whether the sister saw her little sister in the pool, but she was present for resuscitation efforts.

In *Lehmann v. Wieghat*, 917 S.w.2d 379 (Tex. App.–Houston [14th Dist.] 1996, writ denied), the father heard his son get shot while hunting, and he was a half mile to a mile away. He learned about it five to ten minutes later, when the hunter who shot his son drove up with him in the pickup truck and stated, "I shot Darrin." He then saw his son in the back of the truck, unconscious. The court of appeals held that reasonable minds could differ whether appellant had a "sensory and contemporaneous perception" of the injury because the facts were controverted as to how far he was from the scene when his son was shot, whether he actually "perceived" his son being shot when he heard the noise of the second shot, and the time interval between the shooting and when he first saw his son in the truck, such that submission to the jury was proper. But the court also upheld the jury's finding that the father was not located near the scene of the accident and did not contemporaneously perceive it.

More recently, in *Cole v. Hunter*, No. 3:13-CV-02719-O, 2014 WL 266501, at *20 (N.D.

Tex. Jan. 24, 2014),[8] the district court denied the defendant's motion to dismiss based on the allegation that the plaintiffs had a contemporaneous perception of the shooting of their son by virtue of having heard it occur from their front yard. The court concluded that the fact that "they did not witness the shooting of their son" did not, on its own, defeat their bystander claim under Texas law, citing *Landreth v. Reed*, *Lehmann v. Wieghat*, and *Bedgood v. Madalin*.[9]

As discussed, contemporaneous sensory perception is not limited to eyewitness perception of the injury. Eric was present at the restaurant and testified that he heard "the commotion," and that he immediately ran to Tammy and witnessed her in pain. The Court finds that Plaintiffs' evidence is sufficient to deny summary judgment.

## Conclusion

Plaintiffs' Opposed Motion for Leave to File Second Amended Complaint (docket no. 40) is GRANTED, and the Clerk shall file the Second Amended Complaint.

Defendant's Motion for Summary Judgment (docket no. 39) is DENIED.

Plaintiffs' motion to extend time to file response (docket no. 41) and motion to continue

---

[8] The district court's later denial of a qualified immunity motion was appealed to the Fifth Circuit, *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015), and certiorari was granted by the Supreme Court, 137 S. Ct. 497 (Nov. 28, 2016).

[9] The Superior Court of Pennsylvania, which utilizes the same requirements for bystander recovery as Texas, has allowed bystander recovery where a wife was standing in her home looking out her kitchen window, observed her husband arriving home and observed appellee following directly behind him at an excessive rate of speed, heard an impact between two vehicles, arrived at the accident scene immediately thereafter, and found her husband lying unconscious on their front lawn. *Neff v. Lasso*, 555 A.2d 1034 (Pa. Super. Ct. 1989). The court noted, "Although appellant did not visually witness the impact, she experienced a contemporaneous sensory awareness of the accident and its personal import based upon her visual and aural observations before, during, and after the moment of impact." It discussed several Pennsylvania that allowed the plaintiffs to recover for emotional injury where the plaintiffs heard the impact and immediately thereafter visually observed the injured relative, and also found that a review of cases in California, Florida, New Hampshire, and Texas " reveals that the requirement of actual observance of the event has been construed since *Dillon* to include sensory perception of the accident generally and not strict visual observance of the event." The court concluded,

> Our analysis of the foregoing persuasive authorities convinces us that the "sensory and contemporaneous observance" requirement should not be limited to visual observance. Well reasoned opinions in this and other jurisdictions persuade us that the logical and practical focus of the second prong of the *Dillon* test should be whether the observance was direct and immediate as opposed to indirect and removed and not upon the particular sensory vehicle which gave rise to the awareness of the event and its personal import. It is the immediate sensory awareness and not the source (*i.e.* visual, tactile, aural, gustatory or olfactory), of the awareness which must control.

*Id.* at 1313. *See also Rapchak v. Freightliner Custom Chassis Corp.*, No. 2:13-CV-1307, 2015 WL 3645253, at *3 (W.D. Pa. June 10, 2015) (" the observance of the plaintiff does not have to be purely visual: one can witness the traumatic event by other sensory perceptions").

(docket no. 48) are DENIED.

The Court notes that the Defendant's actions in this case have unnecessarily complicated this case in violation of Federal Rule of Civil Procedure 1. Defendant failed to meet and confer in good faith pursuant to Rule 26(f), failed to disclose what it knew about the circumstances of the slip and fall, and then failed to adequately and timely disclose relevant portions of video. Further, Defendant has lodged meritless objections. Further conduct of this type will not be tolerated.

It is so ORDERED.

SIGNED this 2nd day of November, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE